IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | HONORABLE JEROME B. SIMANDLE |
| v. | Criminal Action No. 14-699-6 (JBS) |
| TOZINE TILLER, | **MEMORANDUM OPINION** |
| Defendant. | |

**SIMANDLE, Chief Judge:**

In this criminal action built, in large part, upon evidence obtained during controlled drug purchases, Defendant Tozine Tiller (hereinafter, "Defendant") moves, under Roviaro v. United States, 353 U.S. 53 (1957), for the immediate disclosure of the identity of a certain confidential source, CS-4, and relatedly, (1) for the production of any surveillance materials capturing alleged drug transactions between Defendant and CS-4, and (2) for an order directing the Government to produce CS-4 for an interview. [see Docket Item 230]

Because the Government intends, at this stage, to call CS-4 as a witness at trial, the Government has no opposition to disclosing the identity of CS-4. (See Gov'ts Opp'n at 68-76.) Rather, the Government only takes issue with revealing CS-4's identity prematurely (in light of security concerns), particularly because it has allowed defense counsel to review (1) all consensual recordings, (2) surveillance photographs, (3)

drugs purchased, and (4) laboratory reports analyzing the drugs.[1] (See id.)  For that reason, and in light of concerns over the safety of CS-4, the Government proposes to disclose the identity of CS-4 when it provides Jencks and Giglio material for CS-4 (approximately 3 days prior to the beginning of trial).[2]  (See id. at 74-75.)  The trial of Tozine Tiller and his remaining three co-defendants is presently scheduled for May 23, 2016.

The Court conducted oral argument on Defendant's motion on February 24, 2016 [see Docket Item 256], at which time the Government pressed its belief that the early disclosure of CS-4's identity presented clear risks to the safety of CS-4.  The Government indicated that direct and indirect threats have been made in this investigation directed at persons who were suspected of being confidential sources.  As a result, the Court invited the Government to supplement its position on the threats of violence/witness intimidation arising in this investigation and case.  The Government, in turn, produced an ex parte

---

[1] Because this information has already been revealed to counsel for Defendant, Defendant's motion is principally, if not entirely, directed at disclosing the identity of CS-4 to Defendant himself.

[2] In the event the Government ultimately declines to call CS-4, the Government proposes that CS-4 be produced for questioning outside of Defendant's presence, at which time the Court can determine whether CS-4 possesses any exculpatory information. Because the Government intends, at this stage, to call CS-4, the Court need not weigh the merits of the Government's alternative position.

certification of a federal law enforcement officer on March 2, 2016.

Having reviewed the Government's supplemental certification _in camera_, and for the reasons that follow, Defendant's motion for discovery will be granted in part and denied in part.  The Court finds as follows:

1.   **Factual and Procedural Background**.  The Indictment, filed December 10, 2014, charges Defendant, among others, with conspiring to distribute kilogram quantities of heroin and cocaine throughout southern New Jersey.  [_See_ _generally_ Docket Item 1.]  During the course of the investigation into this alleged drug-trafficking scheme, state and federal law enforcement gathered evidence through a series of drug purchases (namely, controlled buys by confidential sources), package intercepts, and trash pulls, among other investigative techniques.  (_See_ Walsh Aff. at ¶¶ 10-11.)  Indeed, this investigation documented, as relevant here, approximately seven controlled drug purchases between CS-4 and Defendant Tozine Tiller.  In view of the centrality of CS-4 to the Government's evidence against him, Defendant seeks the immediate disclosure of CS-4's identity, among other forms of relief.  [_See_ Docket Item 230.]

2.   **Standard of Review**.  While prevailing law imposes no fixed timetable upon the disclosure of a confidential

3

informant's identity, in Roviaro, the Supreme Court reasoned that "once a defendant sets forth a specific need for disclosure the court should balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" United States v. Jiles, 658 F.2d 194, 196 (3d Cir. 1981) (quoting Roviaro, 353 U.S. at 62).  The result of the balancing will, in turn, depend upon the particular circumstances of the case, "'taking into consideration the crime charged, the possible defenses, the possible significance of the [informant's] testimony, and other relevant factors.'"  Id. (citations omitted).

　　　3.　In the wake of the Supreme Court's guidance in Roviaro, the Third Circuit in Jiles identified three paradigmatic scenarios concerning information identification: one in which the informant played an active and crucial role in the events underlying the defendant's potential criminal liability (creating a likelihood that disclosure will be required to ensure a fair trial); a second category in which the informant acted as a mere tipster (generally requiring no disclosure); and a final category whether the informant acted as a witness and not an informant (requiring a "difficult" balancing of the need for disclosure against the safety concerns).  Id. at 196-97 (citations omitted).

4

4.   **Discussion**.   In this case, the Government alleges that CS-4 actively participated in seven controlled drug buys involving Defendant, all of which law enforcement recorded and memorialized in detailed reports.   In that way, CS-4 plays a central and "important" role in the Government's theory of the case against Defendant, and squarely falls within the first Jiles paradigm.   (See Gov'ts Opp'n at 74 n.38.)   Nevertheless, the Government has already provided defense counsel with access to the contemporaneous recordings and visual depictions of these transactions, and to the detailed reports of debriefing of CS-4 following each of the drug purchases/sales (i.e., they have been provided notice of the essential scope of CS-4's testimony).   (See id. at 72-73.)   Aside from this already comprehensive disclosure, Defendant has identified no specific need for the immediate (as opposed to delayed) disclosure of CS-4's identity.

5.   The Court finds that premature identification of CS-4 presents palpable safety concerns.   Indeed, on the hearing record of February 24, 2016, the Government expressed its belief that early disclosure might place CS-4 in serious jeopardy, given the other instances of witness intimidation and threats of violence in this related criminal proceeding.   The Government's in camera supplemental certification, in turn, fully supports and substantiates the Government's position, and demonstrates

that the circumstances of this action favor delayed disclosure of CS-4's identity, as requested by the Government.

6.    In view of these circumstances, the Court finds disclosure of CS-4's identity warranted overall, subject to some limitations.  More specifically, the Court will require the Government to disclose the identity of CS-4 when it provides the Jencks and Giglio material, but in any event, no later than 3 days before trial.  See United States v. Vaughn, Crim. No. 14-23, 2016 WL 155041, at *2 (D.N.J. Jan. 12, 2016) (following essentially this procedure in relation to a factually similar informant).  Coupled with the comprehensive discovery about these seven drugs buys already in defendant counsel's possession, this delayed disclosure of CS-4's identity will give the defendant ample and fair opportunity to prepare to examine CS-4 at trial, while giving enhanced protection to CS-4 in a threatening environment.

7.    An accompanying Order will be entered.

  March 7, 2016                         s/ Jerome B. Simandle
Date                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge

6