[Dkt. No. 666]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Camden Vicinage

_____
                                    :
UNITED STATES OF AMERICA,           :
                                    :
              v.                    : Crim. No. 14-699-06 (RMB)
                                    :
TONZINE TILLER                      : **OPINION**
_____ :

    This matter comes before the Court upon Defendant Tonzine Tiller's Motion to Reduce Sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. No. 666. Defendant Tiller is currently serving his sentence at FCI Allenwood Low in Allenwood, Pennsylvania. The Court having considered the parties' submissions, and for the reasons discussed below, denies the Motion.

    On October 11, 2016, Tiller pled guilty to distribution and possession with intent to distribute cocaine base in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C). The Court sentenced him to 235 months in prison with three years of supervised release.

    In support of his Motion, Defendant contends that his underlying health condition of obesity with a body mass index of at least 36.1, his hypertension, and the crisis presented by the

COVID-19 pandemic present extraordinary and compelling reasons for this Court to grant the relief requested.[1]

The Government opposes the motion and has introduced evidence of the measures that the Bureau of Prisons has taken to prevent the spread of the coronavirus. As set forth in the Government's submission:

> The BOP has had a Pandemic Influenza Plan in place since 2012. That detailed protocol establishes a six-phase framework that requires BOP facilities to begin preparations on learning of a suspected outbreak and addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.
>                . . .
>
> BOP has implemented Phase Six of the Action Plan, which currently governs operations. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is permitted, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Essential inmate work details, such as Food Service, continue to operate with appropriate screening.
>                . . .
>
> All official staff travel also has been cancelled, as has most staff training. All staff and inmates have face masks and are strongly encouraged to wear an appropriate face covering when social distancing cannot be achieved.

---

[1] Defendant has also introduced evidence that he has seen prison medical staff on three different occasions complaining about coughing and respiratory issues, and on two occasions during the past three years had an upper respiratory infection.

2

> All newly sentenced BOP inmates are processed through one of three quarantine sites.  FCC Yazoo City, MS; FCC Victorville, CA; and FTC Oklahoma City, OK; or to a BOP detention center/jail unit.  The BOP will test all inmates upon arrival at a BOP detention center/jail unit or at one of the three quarantine sites.[2]  All inmates will be tested again before movement to their designated BOP facility.  Every newly admitted BOP inmate is screened for COVID-19 exposure risk factors and symptoms.  Asymptomatic inmates with risk of exposure are placed in quarantine.  Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.  In addition, all staff are screened for symptoms.  Such screening includes self-reporting and temperature checks.
>
> Social and legal visits were stopped as of March 13, 2020, and remain suspended to limit the number of people entering the facility and interacting with inmates.  In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month.  Tours of facilities are also suspended.  Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff, contractors, and visitors.

Govt. Opp., at 5-8.

**DISCUSSION**

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, Dillon v. United States, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exists "extraordinary

---

[2] https://www.bop.gov/coronavirus/covid19_status.jsp (last visited September 14, 2020).

3

and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction. . .

18 U.S.C. § 3582(c) (emphasis added).

Thus, this Court may only grant a motion for reduction of sentence under the FSA if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), as revised (Apr. 8, 2020). This is a statutory requirement that this Court may not waive. See, e.g., Raia, 2020 WL 1647922 at *2; Massieu v. Reno, 91 F.3d 416, 419 (3d Cir. 1996); Ross v. Blake, 136 S. Ct. 1850 (2016).

4

Defendant Tiller filed requests with the BOP seeking both home confinement and compassionate release which were denied. Defendant has therefore exhausted his administrative remedies. United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), as revised (Apr. 8, 2020).

Under 18 U.S.C. §3582(c)(1)(A), this Court may, in certain circumstances, once the exhaustion requirement has been satisfied as it has here, grant a defendant's motion to reduce his term of imprisonment "after considering the factors set forth in [18 3583(a)]," if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction," and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Defendant bears the burden to establish that he is eligible for a sentence reduction.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant

5

is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[3]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i).  Second, the standard is met if the defendant is:

   (I)  suffering from a serious physical or medical condition,

   (II)  suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

---

[3] The policy statement refers only to motions filed by the BOP Director.  That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c).  See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; cf.18 U.S.C. § 3582(c) (2012).  In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Id. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. Id. § 1B1.13, cmt. n.1(B)-(C). The note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." Id. § 1B1.13, cmt. n.1(D).

Here, the parties do not dispute that Defendant is in a high risk category. The Center for Disease Control ("CDC") has classified individuals as high risk if they have a BMI of 30 or higher which Defendant does. Thus, Defendant has presented and met the "extraordinary and compelling" prong to grant compassionate release.

Thus, the Court now turns to analysis of the Section 3553(a) factors. Under the applicable policy statement, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

The Court holds that a sentence reduction here would be inconsistent with the § 3553(a) factors. First, a reduction would fail to "reflect the seriousness of the offense," "promote

7

respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a).  As Judge Simandle discussed at sentencing, - which spanned three days - Tiller engaged in a far-reaching drug conspiracy, a "long series of distributions of cocaine and crack cocaine." Dkt. 538, at 69.  According to Judge Simandle, Defendant was the "glue that held men together with whom he was associated, they did look to him as a partner and someone who knew what to do." Id.  Defendant was summed up by Judge Simandle as follows: "This is a professional drug dealer over a lifetime undeterred by four prior state court convictions and sentences and he still doesn't recognize the seriousness of what he's been involved in." Id.

The "history and characteristics of the defendant" and the need to protect the public also counsel against any sentencing reduction.  Defendant is no stranger to the criminal justice system.  As Judge Simandle observed at sentencing, Criminal History Category II understated the significance of Defendant's record because he had been convicted four times of drug distribution but only two counted due to the age of the offenses.  Moreover, he committed the offense within about five years of having served a significant state sentence, 15 years, of which he served seven years and six months.  As Judge Simandle observed, the Defendant seems to be "undeterred" by a stiff sentence.  Id.  The sentencing Court was clearly concerned

about Defendant's lack of sincere remorse and appreciation of the true devastating effects of his criminal conduct. The need to protect the public is paramount here.

Finally, the need for deterrence and the need to punish the Defendant also weigh against reducing Defendant's sentence. He has served only 70 months of his 235 month sentence. This would be a drastic variance. (The Court disagrees with Defendant's characterization that he has served a "substantial portion" of his sentence.)

The Court does not take lightly Defendant's fear of contracting COVID-19. However, the record before the Court presents a picture that FCI Allenwood Low has been able to address and prevent the spread of COVID-19. Indeed, as the Government points out, and Defendant does not dispute, as of September 14, 2020, there were NO active COVID-19 cases. Moreover, it appears that Defendant's medical conditions are being addressed. Although Defendant states to his counsel that "has stopped going to medical staff because the treatment he has received has been poor," Plaintiff's Supptl. Br., at 7, that is not to say that he is being deprived of medical care. The record before the Court is that the BOP is taking measures to contain the spread of COVID-19, to address Defendant's medical needs, and Defendant has not persuaded this Court that he merits release under the §3553(a) factors.

The Motion is therefore DENIED.

s/Renée Marie Bumb_____
RENÉE MARIE BUMB
United States District Judge

Dated: September 28, 2020